IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EARL T. BARNETT,

      Plaintiff,

v.                               CIVIL ACTION NO. 1:05CV58

ALBERTO GONZALES,
Attorney General,

      Defendant.

## REPORT AND RECOMMENDATION/OPINION

Before the Court is Defendant's Motion to Dismiss or, Alternatively, Motion for Summary Judgement [sic][Docket Entry 14]. This Motion is before the undersigned upon referral by United States District Judge Irene M. Keeley. The motion is fully briefed and ripe for review.

### I. Procedural History

On March 29, 2005, Plaintiff Earl T. Barnett, appearing *pro se*, filed his Complaint, which states in full:

> I would like to file a civil action against Alberto Gonzales, Attorney General, Dept. of Justice Agency in reference to Request No. 05A50522, Appeal No. 01A50308, Agency No. P20040108.
>
> This civil action is suit is [sic] for disability under post traumatic stress, delayed on-set due to the forced resignation when I worked with the Dept. of Corrections in Morgantown, WV.

Plaintiff attached a copy of a Denial Letter from the United States Equal Employment Opportunity Commission ("EEOC"). The Denial Letter advised Barnett of his right to file a civil action in the appropriate United States District Court.

On November 22, 2005, Defendant filed "Defendant's Motion to Dismiss, or, Alternatively,

Motion for Summary Judgement"[sic] and Memorandum in Support. Defendant attached exhibits to his Motion, consisting of the Declaration of Marcia Renaux with attached agency EEO complaint correspondence file.

On December 1, 2005, Plaintiff filed a Response to the defendant's Motion, attaching exhibits including a copy of his work record; a letter to AUSA Daniel W. Dickinson Jr., counsel for Defendant; Department of Veterans Affairs documents; a letter to EEO, Federal Bureau of Prisons; a 7/7/2004 neuropsychological evaluation; a brief from Plaintiff's former counsel to the EEOC; a forensic psychiatry evaluation dated January 2004; and copies of pages from the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS.

On December 22, 2005, the Court sent a "Roseboro Notice"[1] to Plaintiff, advising him that Defendant had filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, and further advising him of his right to file responsive material. The Notice alerted Plaintiff to the fact that his failure to so respond might result in his case being dismissed. The Court gave Plaintiff thirty (30) days to file his opposition, if any, to Defendant's Motion.

On January 23, 2005, Plaintiff filed his "Amended Response to Defense Motion to Dismiss or Alternatively Motion for Summary Judgment." Plaintiff again attached exhibits to his Response.

## II. BACKGROUND

In summarizing the facts, the Court resolves all disputed factual issues in the plaintiffs' favor. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Plaintiff is a Vietnam veteran who saw combat duty in the jungles of Vietnam in the late 1960's. He left the military in 1976. After leaving the Army he began working in July 1976 at the Federal Correctional Institute ("FCI") in Morgantown, West

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

Virginia (known as the Kennedy Youth Center at that time) as a cook helper. He received a within-grade step increase in January 1977. He received a certification of "satisfactory" from his supervisor in April 1977. He received a promotion to cook foreman in March 1978. Attachment #12 to Plaintiff's Response appears to be a work evaluation form. On that form Plaintiff was stated to be, among others, very dependable, very cooperative, confident, very loyal, and well-liked and well-respected by all staff. He received a pay increase in June 1978. The documents submitted by Plaintiff indicate only that he "resigned" in August 1978.

Plaintiff, who is African-American, filed a Complaint with the EEOC based upon wrongful dismissal/discrimination due to race in 1978. Although the 1978 Complaint could not be retrieved due to its age, Plaintiff states that in August of 1978, he was told he could either resign or be fired. He was further informed that if he were fired from a job with the Department of Justice, he would never be able to find another job. Plaintiff therefore resigned. Plaintiff alleged his "resignation" was in reality a constructive discharge based on discrimination due to race. Plaintiff clarifies several times in his Response, however, that his current complaint is not based upon the 1978 complaint and he "is not pursuing a claim due to wrongful termination due to forcible resignation . . . ." (Plaintiff's Amended Response Brief at ___).[2]

Following the termination of his job at the Kennedy Youth Center, Plaintiff worked at many other types of employment, including working in the coal mines from 1981-1988, when he injured both his knees and had to quit. In 1991, he began working for West Virginia University in food service, maintaining that employment for six years until work related back injuries forced him to retire in 1997.

---

[2]The pages in Plaintiff's brief are not numbered.

Plaintiff was diagnosed by the VA with PTSD in 1997, and was awarded a "nonservice-connected pension on a monthly basis" that same year, due to a determination by the VA that he was "permanently and totally disabled." (Attachment to Plaintiff's Response Brief). The VA awarded Plaintiff 100% disability due to PTSD and "unemployability" in 1999.

Plaintiff wrote to the EEO FBP in January 1999, stating, in pertinent part:

I am writing you to explain why I am asking for a claim to be field for post-traumatic stress disorder, that I suffer from, beclaus I was coerces from my job at the KYC in 1978, and my job was terminated at that time. I fiell that my being terminated closs me to have stress.[sic]

In response, Wanda Hunt, EEO Officer, advised:

We are in receipt of your letter which was received in this office on January 27, 1999. You allege that the Federal Correctional Institution, Morgantown, West Virginia, has subjected you to discrimination because of your disability (post traumatic stress) when you were terminated from your position as a Food Manager.

The Equal Employment Opportunity Commissioner regulations found at 29 C.F.R. Section 1614 provide for processing allegations of discrimination based on race, color, sex, national origin, religion, disability, age and or retaliation/reprisal. An aggrieved individual must present the allegations of discrimination to an EEO Counselor before a formal complaint of discrimination can be pursued. Therefore, you must first contact an EEO Counselor within 45 days of the incident you alleged to be discriminatory. The EEO Counselor located at FCI Morgantown, is Roberta Ray she can be reached at (304)296-4416. The EEO Counselor will attempt informal resolution of your complaint and advise you of the procedures for filing a formal complain of discrimination. Should you file a complaint of discrimination and it meets the procedural requirements, it will be investigated by this office.

(Government Ex. 1 page 8)

Plaintiff called the EEO counselor but "did[] not hear from them . . . so [he] let it go."

On January 27, 2004, Plaintiff presented to psychiatrists Bobby Miller M.D. and Ryan Finkenbine, M.D. for a psychiatric evaluation. It was noted that Plaintiff did not have any psychiatric history until diagnosed with post traumatic stress disorder ("PTSD") by the VA in 1997. He was

awarded 100% disability by the VA in 1999. Plaintiff told Drs. Miller and Finkenbine that he had experienced a traumatic event in Vietnam in 1967 that did not result in any psychological symptoms at the time. He exited the military in 1976 with the belief that he sustained no psychological consequences. The psychiatrists opined that, although Plaintiff most likely met the criteria for posttraumatic stress disorder after his military service, his pursuit of work and family affairs appeared to have been an adequate defense. The psychiatrists then reported:

> After his retirement in 1997, he found himself with "too much time to think." He presented to the VA Medical Center with symptoms suggestive of panic attacks. Once established within the clinic, he manifested further symptoms, which were interpreted by the medical staff as posttraumatic stress disorder. This diagnosis was verified by VA psychiatrists and he received treatment including hospitalizations for this diagnosis with apparent benefit. It is plausible that Mr. Barnett had a recurrence of his previously described symptoms after his retirement because, "I felt like I wasn't in control anymore."

Drs. Miller and Finkenbine diagnosed Plaintiff with posttraumatic stress disorder – delayed onset (moderate symptoms), and alcohol abuse (rule out dependence). They then opined:

> While the root of his PTSD was from a Vietnam experience in 1967, the triggering event, which brought forth his current symptomatology, flowed from the consequences of his work related injury. While it may seem implausible that an individual would have a "delayed onset" of a psychiatric illness three decades after the stressor, in this instance, the psychosocial history supports this conclusion.

Plaintiff received the psychiatrists' report on February 27, 2004. On April 2, 2004, he wrote the following letter to EEO, Federal Bureau of Prisons:

> I send to you a letter on the 1-27-99 explaining what happen to me on 8-9-78, about my job, and you said that I have to contact the EEO counselor at the FCI in Morgantown, WV. I did but I didn't not heare from them. So I let it go. (But now) I am request for a disability under (PTSD) because I (recently) found out that I have a (delayed)(onset) of posttraumatic stress disorder in 1980, from the Vietnam experience in 1967 and 68. And when I was terminated from my job at the Bureau, and was working on my discrimination claim, I began to have problems with flashbacks of war, but did not know what was happen at that time. I was seen by my Doctors on the 1-27-04, and I got his report on the 2-20-04. My request is in the time

frame of 45 days, that you want.[sic]

(Government Ex. 1 page 4).

Plaintiff filed his "Complaint of Discrimination" with the U.S. Department of Justice on April 13, 2004, explaining:

> I believe I have disability under (PTSD) and alcohol abuse while I was working on my EEO claim for discrimination in 1978 because over a few months I have problems w/ my mental condition from the Vietnam War. So that is why I am putting in for disability under (delay onset) for (PTSD) + alcohol abuse b/c I recently found out on 02/20/04. [sic]

(Government Exhibit 1 page 1).

Where asked what corrective action he wanted taken on his Complaint, Plaintiff wrote:

> I feel that I should be granted for disability under (PTSD) b/c at that time they cause me to have an onset delay from the Vietnam War. I should be sent to a physicological doctor from their unit for an examination for (PTSD) + alcohol abuse.[sic]

(Government Exhibit 1 page 5).

On April 16, 2004, Defendant wrote to Wanda Dorsey, EEO representative:

> .... I feel that I was cohersed into resigning [in 1978]. At that time I was thinking about my family and how I would take care of them. So I think that all of this was a problem and caused my (PTSD) + my (alcoholic abuse) b/c I was not drinking at that time . . . . My drinking started when I put in for my complaint and worked on it for many months and had nothing else to do. I was confused at that time and I started to have nightmares and flashback and began to feeling hopeless b/c I thought about everything that had happened to me . . . . all my stress was caused by the bureau and brought back memories of my Vietnam Experience . . . . So I think they did me wrong b/c all of my records and evaluations at that time showed that I was doing a good job . . . . I am not putting in for discrimination now. I am putting in for a disability under (PTSD) delay (onset) and (alcohol abuse). I feel that they caused all of my problems.
>
> I feel that they should send me to a psychiatrist for an examination for (PTSD) and (alcohol abuse). You said in the EEO complaint from that I feeled out what do I want out of this. I told you some of it but I ran out of space on your form. I would like for the bureau to pay me all back pay and vacation and sick days that I would have if they did not coherse me into resigning my position as a cook foreman and also I would like to be paid monthly benefits and all of my doctor bills that my occur if you grant

me my claim . . . . You may be able to find some paper work for discrimination at the bureau. But now I am putting in for (PTSD) delay on-set for disability b/c I feel that by them cohercing me into resigning my job caused all of my problems.

(Government Exhibit 1 page 5).

On July 7, 2004, Plaintiff presented to Martin L. Boone, Ph.D. for a Neuropsychological Evaluation. When asked about the initiation of his symptoms, Plaintiff "was somewhat unclear." He reported he remembered experiencing symptoms of PTSD as early as the late 1970's, but began to experience the symptoms much more frequently after he was forced to retire from the Federal Bureau of Prisons without any apparent justification. After this incident, he began to experience extreme worry about his financial status, and went to the VA to be evaluated. "It was at this time that he went to the Veterans Administration Hospital to be evaluated for depression." The intake workers at the VA identified his symptoms as consistent with PTSD, "and he was eventually (in 1999) awarded 100% service-connected disability for PTSD." Dr. Boone concluded:

> The overall results of this neuropsychological evaluation suggest that Mr. Barnett has likely been experiencing some level of Posttraumatic Stress Disorder symptoms since his return from the Vietnam theater in 1968. According to Mr. Barnett, he also experienced a substantial increase in these symptoms after a very stressful occupational experience associated with his employment at FCI Morgantown in the late 1970s. Certainly, anxiety disorders are known to exacerbate at times of increased stress.

(Government Exhibit 1 page 34).

Plaintiff sent a copy of Dr. Boone's report to the EEO Officer on July 26, 2004, with the following letter:

> I am sending you an evaluation update of my disability under PTSD delay onset from Dr. Boone, Ph.D. of Wedgewood Family Practice that states that I have a delay onset of PTSD. Because my job forced me into retirement in 1978 from the FCI in Morgantown, WV. Will you make sure that this report goes into my claim for PTSD delay onset? [sic]

(Government Ex. 1 page 33).

On September 17, 2004, Ted McBurrows, Director, EEO, Justice Management Division, notified Plaintiff that his Complaint was dismissed for untimely contact with An EEO Counselor. He noted the alleged discrimination took place on August 9, 1978, and Plaintiff did not contact an EEO Counselor until approximately 25 years after he resigned from FCI Morgantown. Mr. McBurrows also advised that there was a 45-day time limit for contacting an EEO Officer. This time limit could, however, be extended when the individual showed: 1) he was not notified of the time limits and was not otherwise aware of them; 2) that he did not know and reasonably should not have known that the discriminatory matter or personnel action occurred; 3) that, despite due diligence, he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits; or 4) for other reasons considered sufficient by the agency or the EEOC. Mr. McBurrows then stated:

> In a telephone communication with a Bureau EEO Specialist in July 2004, you informed her that the reason for your delay in contacting an EEO Counselor was due to the fact that you were diagnosed with Post Traumatic Stress Disorder (PTSD) in February 2004.

(Government Ex. 1 page 37).

Plaintiff obtained counsel, and, on November 5, 2004, appealed the above decision. In the Appeal, Plaintiff's counsel alleged the DOJ discriminated against Plaintiff on the basis of a mental disability when it constructively discharged him in 1978. Counsel argued that Plaintiff did not file his complaint within the 45-day time limit, because "he did not know of his condition until shortly before he filed the Complaint." He then argued that Plaintiff's cause of action should begin when he knew or should have known of the cause of action. (Government Ex. 1 page 45).

On January 13, 2005, the EEOC, Office of Federal Operations, entered its Decision finding

that Plaintiff's complaint was properly dismissed pursuant to 20 CFR § 1614.107(a)(2), for untimely EEO Counselor contact. The EEOC noted that Plaintiff's Complaint alleged he was subjected to discrimination on the basis of disability (Delayed Onset Post Traumatic Stress Disorder) when, in August 1978, he was forced to resign. The Office further asserted that Plaintiff presented no persuasive arguments or evidence warranting an extension of the time limit for initiating EEO, noting that Plaintiff stated only that he did not learn he had PTSD until 2004. (Government Ex. 1 page 49).

In early 2005, Plaintiff, again proceeding without counsel, submitted a request for reconsideration to the EEOC, stating:

1. My legal counsel has given up in representing me in this matter.

2. I do not believe you understood what my lawyer's argument in the case, because you state that I was putting in a claim for discrimination. However, I was actually filing a new claim for Delayed Onset of Post Traumatic Stress disorder due to my being forced to resign my employment with the United States Bureau of Prisons in 1978. This is a new claim based upon my learning of this by Dr. Miller's statement in a report of which I learned of this diagnosis on about February 22, 2004. Dr. Miller's diagnosis stated that this was caused by my job due to the my being forced to resign in 1978 from the Federal Correction Institution known as Kennedy Federal Correction Institute, Morgantown Monongalia County, West Virginia. [sic]

(Government Ex. 1 page 53).

On March 22, 2005, the EEOC denied Plaintiff's request for reconsideration, making EEOC Appeal No. 10A50308 the Commissioner's final decision. (Government Ex. 1 page 59).

On March 27, 2005, Plaintiff filed the instant Complaint with this Court, which provides:

I would like to file a civil action against Alberto Gonzales, Attorney General, Dept. of Justice Agency in reference to Request No. 05A50522, Appeal No. 01A50308, Agency No. P20040108.

This civil action is suit is [sic] for disability under post traumatic stress, delayed on-set due to the forced resignation when I worked with the Dept. of Corrections in Morgantown, WV.

On November 10, 2005, Plaintiff wrote to counsel for the defendant, stating, in pertinent part:

> Enclosed please find copies of a letter from the Veterans Administration, VA, to explain about the PTSD-DO. The VA feels that I suffered from PTSD, not delay onset, from my military service in the Vietnam War, but the delay onset came from "Non-Service" connected reasons, which was a result of my job with the Bureau of Prisons and my having been forcibly made to resign in 1978, which was established by the VA in 1999 as being "unemployable", when it was determined that I could not work for anyone because of the PTSD-DO. . . . . I am simply trying to show you that I should receive non-service disability from the Bureau of Prisons because the records prove they caused me to have the PTSD-DO in 1978 when they forced me to resign my job. . . .
>
> The VA currently pays me for disability related to the Vietnam War since I am "unemployable". However, since the VA also classified me as 70% Non-service Connected disability in August 1997 . . . due to the unemployability, as determined in 1999, I feel this is the correct amount of reward that the Bureau of Prisons is responsible for causing the delayed onset of PTSD-DO, with a monthly payment due to the disability . . . . Guidelines of PTSD-DO show that it takes many years to occur and that is what happened to me in 1978. I feel I should receive an award for severance from the Bureau of Prisons from August 1978 to the filing of this case, in addition to monetary award due to the fact that when they forcibly terminated my position they would not give me any justification of my having to leave my job. This is why I originally filed a discrimination claim against the Bureau of Prisons. Upon separation of employment with the Bureau of Prisons is when I started having problems sleeping, panic, attacks, nightmares, and having suicidal thoughts.

(Plaintiff's Ex. Page ____).

### III. STANDARD OF LAW

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In considering a motion for summary judgment, the court is required to draw reasonable inferences from the facts in a light most favorable to the nonmoving party. Id. at 255.

The moving party has the burden of initially showing the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

## IV. ANALYSIS
### A. Examination of the Complaint

The United States Supreme Court holds that a complaint, especially a pro se complaint, should not be dismissed summarily unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(quoting from Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Based on United States Supreme Court rulings, the Fourth Circuit, in Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978), quoted with approval Canty v. City of Richmond, 383 F. Supp. 1396 (E.D. Va. 1974), affirmed 526 F.2d 587 (4th Cir. 1975), cert. denied 423 U.S. 1062, 96 S. Ct. 802, 46 L.Ed.2d 654 (1976), as follows:

> (T)he Fourth Circuit takes the position that its district courts must be especially solicitous of civil rights plaintiffs.
>
> This solicitude for a civil rights plaintiff with counsel must be heightened when a civil rights plaintiff appears pro se. In the great run of pro se cases, the issues are faintly articulated and often only dimly perceived. There is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done. So, although the Court of Appeals cannot mean that it expects the district courts to assume the role of advocate for the pro se plaintiff, radiations from Burris strongly suggest that the district court must examine the pro se complaint to see whether the facts alleged, or the set of facts which

the plaintiff might be able to prove, could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations. Accordingly, the Court in considering the defendant's motion to dismiss will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed.

Id. at 1151.

Following the dictates of the United States Supreme Court and the Fourth Circuit, the undersigned, after reviewing the pleadings and exhibits, concludes there are two different ways Plaintiff's Complaint can reasonably be construed. One such construction is that "inferred" by the Defendant. As construed by Defendant, the undersigned finds the Motion for Summary Judgment should be granted. Construed in a different way, however, the Motion for Summary Judgment should be denied. The undersigned will discuss both interpretations in this Report and Recommendation to the District Court.

### B. The Complaint as Construed by the Government

Defendant construes Plaintiff's Complaint in this Court as an employment discrimination case based on a mental disability, stating as follows:

> Although Plaintiff's Complaint may not meet the applicable pleading standards, it may be inferred from the complaint and its attachment that the Plaintiff seeks to file a civil action after issuance of a final agency decision from the U.S. Equal Employment Opportunity Commission (hereafter EEOC). .... Accordingly, the Complaint appears to be fairly interpreted as an employment discrimination case based upon Plaintiff's alleged mental disability and "coerced" resignation from the employment of the Defendant, all pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

Defendant bases his motion for summary judgment on the Plaintiff's failure to exhaust his administrative remedies. It is clear from the pleadings and exhibits, that the only discriminatory act relevant to this case took place in 1978, when Plaintiff resigned, allegedly due to coercion. Plaintiff

at that time alleged the forced resignation was discriminatory, based on race.

According to Defendant's interpretation of the Complaint, Plaintiff alleges he was forced to resign from his job with the Bureau of Prisons due to his disability, PTSD. As such the Complaint invokes the Rehabilitation Act of 1973, as amended, the non-discrimination statute which prohibits most federal agencies from discriminating against individuals with disabilities in employment practices. 29 U.S.C. §§ 791, 794(c)(hereinafter "Rehabilitation Act"). The Rehabilitation Act adopts the "remedies, procedures, and rights" of Title VII. See 29 U.S.C. §794a(a)(1). To bring a civil action under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC. Smith v. First Union Nat'l, Bank, 202 F.3d 234 (4th Cir. 2000). The Fourth Circuit has instructed that "[a] plaintiff's EEOC charge defines the scope of [his] subsequent right to institute a civil suit." Id. Furthermore, "[i]f a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in [his] subsequent civil suit." Id.

At the time the alleged discriminatory act occurred, in 1978, the EEOC regulations governing federal sector discrimination complaint procedures were found at 29 C.F.R. Part 1613. EEOC regulation 29 C.F.R. § 1613.214(a)(1)(I) required that a federal employee filing a complaint of discrimination with an agency was required to first bring the complaint to the attention of an EEO counselor at that agency within 30 days of the alleged discriminatory event.[3] Even under the amended, more lenient time frame, Plaintiff clearly did not contact an EEO counselor regarding his disability discrimination claim within the requisite time period. He admits he finally contacted an

---

[3] The regulations as amended effective October 1, 1992, extended the time to contact an EEO counselor to 45 days. 29 C.F.R. § 1614.105(a)(1).

EEO counselor regarding the disability claim in 2004, more than 25 years after the alleged discriminatory event. It was on this basis the EEOC dismissed Plaintiff's claim.

Plaintiff, however, argues he could not have contacted an EEO counselor within 30 or even 45 days of the discriminatory act in 1978, because he was not aware he had the disability, PTSD-DO, until 2004. Exhaustion of administrative remedies within the EEOC is not a subject matter jurisdiction prerequisite to suit in federal court. It is, instead, a prerequisite akin to a statute of limitations. See Zogrofov v. V.A. Medical Center, 779 F.2d 967 (4th Cir. 1985). Like a statute of limitations it is therefore subject to equitable tolling. Id. Under certain circumstances, waiver of the time limit is mandatory:

> The agency of the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section [i] when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, [ii] that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, [iii] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or [iv] for other reasons considered sufficient by the agency or the Commission.

Plaintiff here does not allege, nor does the undersigned find, that he was not notified of the time limits or was not otherwise aware of them. That Plaintiff did timely file a Complaint in 1978 based on racial discrimination evidences that he was well aware of the procedures to follow. Plaintiff's argument is best construed under [ii] – he did not know and reasonably should not have known that the discriminatory matter or personnel action occurred. He argues that because he was unaware he had PTSD-DO until 2004, he could not possibly have known he was discriminated against because of it in 1978. This argument must also fail, however, because Plaintiff's own exhibits show he was diagnosed with PTSD in 1997, and awarded 100% disability due to PTSD and unemployability in 1999. The evidence also indicates he was well aware of his own diagnosis and

award of disability at the time. The 30 (or 45) day limit to contact an EEO counselor regarding his disability discrimination claim therefore expired at the very latest 45 days after the VA determined he was disabled in 1999.

For all the above reasons, should the District Court accept Defendant's interpretation of the Plaintiff's Complaint in this matter, the undersigned would recommend the Court grant Defendant's Motion for Summary Judgment.

### C. The Complaint as Construed by the Undersigned United States Magistrate Judge

Despite the above lengthy discussion, the undersigned believes the Government (among many others, including the EEOC and Plaintiff's own former counsel) has misconstrued Plaintiff's Complaint, all the way back to his Complaint to the EEO. The undersigned further believes a more reasonable interpretation of Plaintiff's Complaint is not that his PTSD-DO was the cause of his constructive discharge in 1978, but that the constructive discharge was the cause of his PTSD-DO symptoms. He represents to the Court emphatically that he is not claiming discrimination due to disability, but disability due to discrimination.

The undersigned does not address the merits, if any, of this interpretation of Plaintiff's Complaint. It is indisputable that the alleged discriminatory act that Plaintiff alleges triggered his PTSD-DO symptoms still occurred in 1978. His Complaint now appears best interpreted as one for damages due to the alleged discriminatory act. As such, timeliness may still be an issue, among others. It may well be that Plaintiff fares no better under this interpretation than under the Government's, but the undersigned does not believe that question is before him at this time.

What is before the undersigned at this time is Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment. The undersigned finds Defendant's Motion is nonresponsive

to Plaintiff's Complaint in this matter, and therefore respectfully recommends the Court deny said Motion.

## V. Recommended Decision

In accord with the reasons herein stated, the undersigned recommends that "Defendant's Motion to Dismiss or, Alternatively, Motion for Summary Judgement" [sic] (Docket Entry 14) be **DENIED without prejudice as nonresponsive to Plaintiff's Complaint.** The undersigned further recommends Defendant be directed to file a timely answer to Plaintiff's Complaint in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to Plaintiff *pro se* and counsel of record.

Respectfully submitted this 20 day of June, 2006.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE